FILED
2010 May-18  AM 08:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| LATANYA S. TANNIEHILL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  2:08-cv-01387-HGD |
| | ) | |
| BALL HEALTHCARE, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the Motion for Summary Judgment filed by defendant, Ball Healthcare.[1]  (Doc. #18).   The parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

Plaintiff, LaTanya Tanniehill, alleges in her complaint that she was employed by defendant from May 1, 2005 to September 18, 2007.  She further alleges that in September 2005,[2] Kevin Ball started sexually harassing her and offered her increased

---

[1]  The correct name for defendant is Ball Healthcare Jefferson, Inc. d/b/a Cherry Hill Healthcare Center.

[2]  Plaintiff avers in Paragraph 16 of her complaint that the sexual harassment began in September 2005.  However, in Paragraph 18, she alleges that the harassment began in September 2006.

compensation and privileges in exchange for sex.  Plaintiff avers she rejected his

advances and reported him to defendant.  On September 21, 2007, plaintiff was fired,

and she contends that her termination was without cause but based on her complaints

about Kevin Ball.  Plaintiff asserts causes of action under Title VII for sexual

harassment, maintenance of a sexually hostile environment and retaliation.[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Rule 56, Fed.R.Civ.P., "should be rendered if

the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  Thus, summary judgment

is appropriate where the non-movant "fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will

---

[3] In the caption of her complaint, plaintiff lists "Ball Healthcare, et al." as defendants, and on page 5 of her complaint, she indicates that Kevin Ball is also named as a defendant.  She also refers to "Defendant Kevin Ball" in paragraph 16 of the complaint and the "individual defendant" in paragraph 21.  However, in Section IV of the complaint, entitled "Parties," she lists only Ball Healthcare as a defendant.  Further, she only makes claims pursuant to Title VII and does not assert any state law claims.  It is settled that an employee/supervisor, who does not otherwise qualify as an "employer," cannot be held individually liable under Title VII.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995); *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995); *Lenhardt v. Basic Institute of Tech. Inc.*, 55 F.3d 377, 381 (8th Cir. 1995); *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995); *Smith v. Lomax*, 45 F.3d 402, 403 (11th Cir. 1995); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 588 (9th Cir. 1993); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993).

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences

are to be drawn in his or her favor.  *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of coming forward with sufficient evidence as to each material element of her claims sufficient to permit a reasonable jury to find in her favor.

Defendant filed its Motion for Summary Judgment on August 5, 2009, accompanied by a brief and supporting deposition testimony and other exhibits. Fed.R.Civ.P. 56(c)(1)(B) requires that "a party opposing the motion [for summary judgment] must file a response within 21 days after the motion is served or a responsive pleading is due, whichever is later."  Under Appendix II to the Initial Order Governing All Further Proceedings entered in this action on August 25, 2008, the responsive submission of the party opposing a motion for summary judgment was to be filed not later than 21 days after the motion for summary judgment is filed. (Doc. #7 at 16).  To date, plaintiff has not filed any opposition to the Motion for Summary Judgment.  Therefore, the motion is deemed unopposed by the court.[4]

---

[4] On May 16, 2010, plaintiff's counsel filed a Motion to File Out of Time Response to Summary Judgment Motion of Defendants (sic).  (Doc. #22).  Plaintiff's response to the motion for summary judgment was due by August 8, 2009, under Appendix II to the Uniform Initial Order, and no extension of time was sought prior to the due date.  Therefore, on May 17, 2010, the court entered an order denying plaintiff's motion.

Rule 56(e)(2), Fed.R.Civ.P., further provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response *must*-by affidavit or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.

Fed.R.Civ.P. 56(e)(2)(emphasis added).  As the Supreme Court has explained, "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1356.

## FACTUAL BACKGROUND

Plaintiff, LaTanya Tanniehill, was employed by Cherry Hill Healthcare Center as a Certified Nursing Assistant (CNA).  Cherry Hill is a residential nursing home, operated by Ball Healthcare, that provides professional nursing and rehabilitation services for the elderly.  Clarence Ball is responsible for the corporate management of Ball Healthcare Services and its subsidiaries, including defendant, Ball Healthcare-Jefferson, Inc.  Kevin Ball is the administrator of Cherry Hill Healthcare Center.

During her employment at Cherry Hill, Tanniehill was supervised by a registered nurse shift supervisor. They, in turn, were supervised by Judy Mason, Director of Nursing. Mason reported to both Kevin Ball and Cora Young, Regional Director of Quality Assurance. Sharon Prince-Moore was responsible for corporate Human Resources, including the administration of Cherry Hill's Equal Employment Opportunity/Harassment Policy.

It is uncontroverted that, prior to the event that is the subject of this lawsuit, Cherry Hill had implemented, disseminated and enforced a comprehensive equal employment opportunity/harassment policy (EEO Policy). This policy prohibits all forms of unlawful harassment, including sexual harassment. It also contains a complaint procedure for employees to assert sexual harassment complaints directly to Sharon Prince-Moore, if the complaint involves an administrator.

Upon employment, Tanniehill was provided with a copy of Cherry Hill's Employee Handbook, which contained the EEO Policy. Each employee was required to sign an acknowledgment that he or she had "read, understand[s], and agree[s] to comply with the policy." Additionally, all administrators, including Kevin Ball, undergo periodic training on the EEO Policy and their obligations under the policy, including specific training on the prohibition against sexual harassment. Kevin Ball attended such training in 2002, 2005, 2006 and 2008. Except for plaintiff, no one has

ever complained that Kevin Ball engaged in sexual harassment in any form during his eight years as Administrator of Cherry Hill.

Tanniehill was hired as a CNA in May 2006. Her job entailed assisting residents with bathing, dressing, and personal hygiene and performing other non-professional resident care tasks under the direction of the professional nursing staff. During the 16 months before her sexual harassment claim was made against Administrator Ball, Tanniehill received ten Employee Warning Notices, ranging from verbal counseling to a three-day suspension without pay, for various infractions of Cherry Hill policies and rules, including exhibiting a poor "attitude" on three separate occasions (also reflected in her first annual performance appraisal); insubordination on two occasions; reporting to work out of uniform; and frequent tardiness. These warnings were issued by a number of different supervisors. Only the last two of these Employee Warning Notices was issued by Director of Nursing Judy Mason. One occurred on August 19, 2007, when plaintiff was suspended by Mason for three days without pay for Tanniehill's "insubordination" and poor "attitude" after Tanniehill refused to comply with her shift supervisor's instructions, called a co-worker "stupid," and failed to comply with Director Mason's instructions to trim her long fingernails, which, according to Mason, posed a safety concern because a CNA's job duties entail close personal contact with the elderly residents. In addition, she

received a one-day suspension from Mason on August 31, 2007, for exhibiting a poor attitude, leaving her assigned area, and being out of uniform.

According to Tanniehill, around November or December 2006, she was walking to a local night club (The Platinum Club) after work one evening when Kevin Ball pulled up beside her in his car and asked if she was supposed to be at work. When she responded "no," he asked if she had his cell phone number. When she again responded "no," he allegedly stated that she "should have it."

On another occasion in 2006, Tanniehill was talking by cell phone with a male friend, who handed Ball the telephone. Ball then asked Tanniehill "if [s]he had any friends that he could talk to" and, when Tanniehill said "no," he stated that "[t]here was a lot of people he was considering talking to at the nursing home, but he had too much to lose." Tanniehill did not report this conversation to anyone at Cherry Hill until August 28, 2007, many months later.

In late July early August 2007, Tanniehill sought a work schedule change from Judy Mason so that she could attend certain nursing school classes. Mason agreed to this, but forgot to change plaintiff's schedule. In late August 2007, Tanniehill became upset when she saw her work schedule for September 2007, because the accommodation for her classes had resulted in what she characterized as a "part time" work schedule, even though she was a full-time CNA. During the morning of

August 28, 2007, Tanniehill met with Director of Nursing Judy Mason but was dissatisfied with Mason's proposed resolution, that she pick up five or more shifts by filling in on the evening shift.

Later that day, Tanniehill delivered a written complaint to Administrator Ball's office regarding her work schedule and her recent disciplinary suspension for failing to trim her fingernails. In the note, she also asked to speak with him once he finished reading her complaints. On the same day, Tanniehill telephoned Mason's supervisor, Regional Director Cora Young, to complain about her schedule.

After Tanniehill clocked out after her shift on August 28, 2007, she visited Kevin Ball's office. She was still upset with Mason over her work schedule. At the end of the meeting, Tanniehill asserts that Ball stated, "As pretty as you are, I know you are not going to worry about the number of hours you will get, because you can get paid off your looks." She also claims that he asked her if she would meet him at the local night club and "see what it leads to." After Tanniehill left Ball's office, Ball received a call from Regional Director Young. Young requested that Ball address the work schedule problem personally. He agreed to do so, and Tanniehill's September schedule was changed "to her satisfaction."

Later in the evening of August 28, 2007, Tanniehill telephoned Sharon Prince-Moore to complain about Kevin Ball's "sexual harassment" under Cherry Hill's EEO

Policy.  She reported that, when she visited Administrator Ball to discuss her work schedule, he "blew her off" and commented on her good looks and her hair style. Moore then called President Clarence Ball to report Tanniehill's complaint.  Clarence Ball instructed Moore to complete an investigation following her normal procedures, and the two agreed that, pending completion of the investigation, Administrator Ball would not be involved in Ms. Tanniehill's supervision, counseling or discipline.  The matter would be handled exclusively within the nursing department's regular supervisory structure.  She then called Kevin Ball and advised him of the complaint and that he was not to be involved in Tanniehill's supervision.

Moore conducted an examination and completed a report for Clarence Ball. Moore advised Clarence Ball that she could not confirm that Kevin Ball engaged in sexual harassment but that some of his comments were not appropriate.   She recommended that he be provided with in-service counseling and training on the EEO Policy, particularly on sexual harassment.    In addition, it was decided that Tanniehill's supervision would be conducted exclusively within the chain of supervision for the nursing department and would not involve Kevin Ball.  Moore met with Kevin Ball on September 14, 2007, and provided the instructions regarding Tanniehill's supervision and conducted the in-service training on the EEO Policy.

Also on September 14, 2007, Moore met with Tanniehill and informed her of the results of the investigation. Moore assured Tanniehill that she would not be subjected to any further unwelcome comments by Kevin Ball. Moore advised Tanniehill to report directly to Director of Nursing Mason or to Moore if she had any further complaints. Tanniehill was dissatisfied with this resolution and wanted Kevin Ball fired. However, she admits that Kevin Ball did not make any offensive comments thereafter.

On September 18, 2007, four days after meeting with Moore regarding the results of Moore's investigation into Tanniehill's complaint of sexual harassment, Tanniehill filed a charge of discrimination with the EEOC. In her charge, Tanniehill alleges only "unwelcome sexual harassment by the Administrator." She did not check the box on the form provided to indicate she was also claiming "retaliation." In her EEOC intake questionnaire, Tanniehill described only her sexual harassment claim as the reason for her claim of employment discrimination.

Two days later, on September 20, 2007, Tanniehill submitted a letter of resignation to Director of Nursing Mason. She already had applied for another job, which she accepted shortly after she resigned. Although Kevin Ball made no further offensive remarks after her complaint, Tanniehill later testified that she resigned

because Cherry Hill could not assure her that he would not make comments in the future.

Upon receipt of her letter of resignation, which provided two weeks' notice, Mason concluded, based on Tanniehill's past disciplinary record, to accept her resignation effective immediately. The Cherry Hill Employee Handbook expressly afforded Cherry Hill the right to do so. Nonetheless, Administrator Ball, when advised of Tanniehill's resignation, directed that Tanniehill be paid through the end of the September work schedule. Tanniehill had been scheduled to work four more shifts on the September schedule. She was paid for six, although she was not required to work them. Director of Nursing Moore was not aware that Tanniehill had made a sexual harassment or discrimination complaint when she disciplined her in August 2007 or when she accepted her resignation in September.

## DISCUSSION

In her complaint, plaintiff alleges that she:

> suffered unlawful employment practices including but not
> limited to sexual harassment and intimidation from
> supervisory personnel, a hostile work environment,
> reprisals and retaliation for exercising a protected right,
> and unwarranted and unfounded disciplinary action
> including but not limited to suspension without pay.

(Doc. #1, Complaint, at ¶ 15).  She also alleges that Kevin Ball sexually harassed her by making:

> sexual advances and demands, together with offers of increased compensation, terms of employment, job conditions, and privileges in exchange for the plaintiff's engagement in sexual activity with the defendant.

(*Id.* at ¶ 17).

Plaintiff further complains that she was discharged from her employment on September 21, 2007, without cause by Kevin Ball:

> based upon the grounds that plaintiff had resisted his sexual advances and had refused to engage in the sexual activity demanded and requested by the individual defendant, and her subsequent reporting of said sexual harassment to the Corporate Defendant.

(*Id.* at ¶ 20).

## Hostile Environment Sexual Harassment

The Eleventh Circuit set forth in *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) (*en banc*), the elements that an employee must establish to support a hostile environment claim under Title VII based on harassment.  An employee must establish (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have

been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Id.* at 1245.

The fourth element–that the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment"–is the element that tests the mettle of most sexual harassment claims. Requiring the plaintiff to prove that the harassment is severe or pervasive ensures that Title VII does not become a mere "general civility code." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283-84, 141 L.Ed.2d 662 (1998)). This requirement is regarded "as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace–such as male-on-male horseplay or intersexual flirtation–for discriminatory 'conditions of employment.'" *Gupta*, 212 F.3d at 583 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998)).

Accordingly, a plaintiff must establish not only that he or she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive. *See Mendoza*, 195 F.3d

at 1246; *Faragher*, 524 U.S. at 788, 118 S.Ct. at 2284 (explaining that the objective component of the "severe and pervasive" element prevents "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" from falling under Title VII's broad protections (citation omitted)).

If the complained-of statements and conduct are of a gender-related or sexual nature, there are four factors that are considered in determining whether they are sufficiently severe and pervasive from an objective standpoint to alter an employee's terms or conditions of employment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

Even assuming that the statements of Kevin Ball were sexual in nature, they fall far short of "severe and pervasive." Plaintiff only describes a few scattered events which she asserts as the basis for her claim of sexual harassment. The conduct alleged was not severe, nor was it physically threatening or humiliating. Likewise, there is no evidence that this conduct interfered with plaintiff's job performance. Consequently, she has failed to establish that she was subjected to a sexually hostile environment.

## Vicarious Liability–*Quid Pro Quo* Sexual Harassment

Even were the court to find Kevin Ball's conduct sufficiently severe to amount to sexual harassment, there is no basis for holding the corporate defendant liable for his actions.  To the extent that harassing behavior is caused by supervisory personnel, the Supreme Court decisions of *Faragher*, *supra*, and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed. 2d 633 (1998), teach that any supervisor's actions, and not only those of "higher management," must be imputed to the employer when those actions are (1) discriminatory and (2) aided by the agency relationship.

In *Faragher* and *Ellerth*, the Supreme Court established that employers are vicariously liable for the actions of their supervisory personnel when the supervisor creates a hostile environment in the workplace.  It is not necessary that those at the highest executive levels receive actual notice before an employer is subject to liability for sexual harassment.  An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Faragher*, 524 U.S. at 806-08, 118 S.Ct. at 2292-93; *see also Ellerth*, 524 U.S. at 764-65, 118 S.Ct. at 2270 (same).

To establish liability, the Supreme Court differentiated between cases in which an employee suffers an adverse "tangible employment action" as a result of sexual harassment and those cases in which an employee suffers the intangible harm of the indignity and humiliation caused by hostile work environment sexual harassment. In the former case, the vicarious liability is established simply by the proof of sexual harassment and the adverse tangible employment action taken by the supervisor. *See Faragher*, 524 U.S. at 807-08, 118 S.Ct. at 2292-93; *Ellerth*, 524 U.S. at 763-64, 118 S.Ct. at 2270. "[A] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" as well as the "denial of a raise or a promotion." *Ellerth*, 524 U.S. at 761, 118 S.Ct. at 2268.

The record evidence reflects no tangible employment action taken against Tanniehill after her complaint about Kevin Ball. Although she alleges in her complaint that she was terminated, the deposition testimony does not bear this out. The testimony of plaintiff reflects that she was not terminated; instead, she resigned. Furthermore, she already had applied for another job, which she accepted shortly after her resignation from Cherry Hill.

Likewise, her resignation was not a constructive discharge sufficient to amount to a tangible employment action.  Tanniehill never presented any testimony that she resigned due to some oppressive sexually hostile atmosphere.  Instead, she stated that she quit because, although she was assured that the conduct she complained of had been addressed, she was not sure it would not reoccur.  This does not amount to the "unendurable working conditions" necessary to convert her resignation into a constructive discharge.  *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 133-34, 124 S.Ct. 2342, 2347, 159 L.Ed.2d 204 (2004).

Although her suspension may be considered a tangible employment action, there is no evidence that it was imposed as a result of plaintiff's refusal to meet Kevin Ball at The Platinum Club or give in to any other demand of a sexual nature. Furthermore, the suspensions were imposed by Director of Nursing Mason.  There is no evidence that she was aware of any of the alleged harassing behavior by Ball or that she imposed this discipline at Ball's behest.

When a supervisor's actions cause intangible harm or humiliation but do not result in a tangible employment action, when the company has an anti-harassment policy in place, the employer is liable only when the harassment is brought to its attention and it fails to act to effectively deal with the problem.  The existence of a viable anti-harassment policy helps to shield the employer from liability for this type

of supervisor harassment.  Ball Healthcare had an anti-harassment policy in place which it used to deal with the situation, and plaintiff acknowledged in her testimony that she utilized it and was not harassed any further after making her complaint.  This negates any liability on the part of the defendant corporation for these acts.  *See Walton v. Johnson & Johnson Servs., Inc.,* 347 F.3d 1272, 1288 (11th Cir. 2003) (where substantive measures taken by employer are sufficient to address the problem, complaints about the process of the investigation leading up to these measures ring hollow); *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1363-64 (11th Cir. 1999).  Although plaintiff testified that she considered the investigative process and the steps taken by the plaintiff corporation to be inadequate, because it could not guarantee that the harassment would not reoccur in the future, it was clearly effective.  The harassment ceased.  Therefore, this claim is without merit.

## Retaliation

Plaintiff also asserts that she was subjected to unwarranted disciplinary action in retaliation for her complaints about harassment by Kevin Ball.  Again, this is not borne out by the evidence presented.  In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate (1) that she engaged in statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse

action was causally related to the plaintiff's protected activities. *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1074 (11th Cir. 1995).

As noted above, the suspension which plaintiff alleges to have been retaliatory in nature was imposed by Director of Nursing Mason. The court will assume, *arguendo*, that this suspension is an adverse employment action. However, even though this occurred very shortly after plaintiff had complained about the alleged harassment by Kevin Ball, there is no evidence that Mason was aware of her complaint. In fact, the only evidence in this regard is undisputed and reflects that Mason was unaware of plaintiff's complaint either at the time she suspended plaintiff or when she later decided to accept her resignation without allowing her to serve out her two weeks' notice.[5] Thus, plaintiff cannot establish the third prong of a retaliation claim because there is no evidence that the adverse action was causally related to her complaint about Kevin Ball's conduct.

Furthermore, plaintiff made no claim of retaliation in her EEOC charge of discrimination. The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action. A Title VII action may be based not only upon the specific complaints made by the employee's initial EEOC charge, but

---

[5] In any event, this is not an adverse employment action because plaintiff was paid for the rest of the month, even though she did not actually perform any work.

also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that reasonably could be expected to grow out of the initial charges of discrimination.   *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (internal quotations and citations omitted).  Plaintiff's retaliation claim, however, is not one which reasonably could have been expected to grow out of her initial charge of discrimination.  In her charge of discrimination, plaintiff complained about alleged sexual harassment by Kevin Ball regarding remarks he made, which she interpreted to be sexual in nature. In this charge, Tanniehill made no mention of having been suspended without pay by Mason or that this suspension was related to the alleged harassment by Kevin Ball. In fact, although the form that she used to state her charge of discrimination had a box to check if she were also alleging retaliation, plaintiff did not check it and she made no reference to any alleged acts of retaliation in her charge.   Consequently, Tanniehill's claim that her suspension was an act of retaliation is without merit.

In addition, the undisputed evidence reflects that Tanniehill's termination, which occurred after she filed her initial charge of discrimination, was a voluntary resignation and not a constructive discharge.  Therefore, it also does not qualify as an act of retaliation.   Thus, this claim is without merit.

There is also a strong argument that plaintiff's retaliation claim, *vis-a-vis* her termination, is also untimely.  Circuits disagree on whether, after *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), discrete acts of retaliation must be exhausted.  *Compare Wedow v. Kansas City, Mo.*, 442 F.3d 661, 673-74 (8th Cir. 2006) (retaliation claims remain viable without separate exhaustion) *with Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (unexhausted retaliation claims are no longer viable after *Morgan*).  Although there is no Eleventh Circuit case on point establishing the necessity of filing a claim of retaliation with the EEOC, the Tenth Circuit has held that such a filing is necessary and the court finds its reasoning to be most persuasive.  *Martinez, supra*.

Even if it were somehow "related" to plaintiff's discrimination claim, her constructive discharge/termination, as an alleged retaliatory act, constitutes a discrete act of discrimination.  *See Martinez*, 347 F.3d at 1211 ("The September 2000 and April 2001 disciplinary actions are clearly discrete and independent actions, though part of what Mr. Martinez must necessarily claim is a 'continuing violation.'"); *Coleman-Adebayo v. Leavitt*, 326 F.Supp.2d 132, 138 (D.D.C. 2004) ("Individual acts of retaliation that form the basis of retaliation claims . . . are included within the Supreme Court's list of discrete discriminatory acts, and therefore any claim stemming from those acts must be administratively exhausted.").   "Each

discriminatory act starts a new clock for filing charges alleging that act." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 113, 122 S.Ct. at 2072. "A discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequences." *United Airlines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Plaintiff has produced no evidence that she exhausted her administrative remedies for the allegedly retaliatory act of constructive discharge or termination. Because the plaintiff failed to timely exhaust her administrative remedy, plaintiff's claim is barred, at least with respect to this alleged act of retaliation. *See also Terhune v. Potter*, 2009 WL 2382281, *4 (M.D.Fla. July 31, 2009).

## CONCLUSION

Plaintiff's sexual harassment and retaliation claims are insufficient as a matter of law. Therefore, the court concludes that defendant's motion for summary is due to be granted and this action dismissed with prejudice. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 17th day of May, 2010.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE